IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-02207-PAB

YVONNE RATH,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Yvonne Rath. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying her claim for supplemental security income under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-83c.[1] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On December 3, 2007, plaintiff applied for supplemental security income. R. at 34. Plaintiff alleged that she had been disabled since February 22,1993. *Id*. After an initial administrative denial of her claim, plaintiff received a hearing before an Administrative Law Judge ("ALJ") on December 14, 2009. *Id*. On June 24, 2010, the ALJ issued a decision denying plaintiff's claim. R. at 43. The ALJ found that plaintiff

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

had the following severe impairments: seizure disorder, obesity, depression, bipolar disorder, and possible schizophrenia. R. at 36. The ALJ concluded that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, R. at 37, and ruled that plaintiff had the residual functional capacity ("RFC") to "perform very heavy work with an inability to climb ladders, ropes, or scaffolds and a need to avoid hazards such as unprotected heights, moving mechanical parts, and operating motor vehicle[s]. The claimant is limited to only occasional interactions with coworkers and the general public." *Id.* The ALJ concluded that plaintiff had no past relevant work, but, based upon this RFC and pursuant to Social Security Rulings 85-15 and 83-14 and the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. pt. 404, subpt. P, app 2, the ALJ concluded that plaintiff was not disabled as "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. at 42.

The Appeals Council denied plaintiff's request for review of this denial. R. at 1. Thus, the ALJ's decision is the final decision of the Commissioner. Pursuant to multiple extensions of time granted by the Appeals Counsel, R. 4-27, on August 16, 2013, plaintiff commenced this action. Docket No. 1.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel*

*v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B. The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

> which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of

those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ's Decision

#### 1.  Dr. Quintero

Plaintiff argues that the ALJ erred in weighing the opinion of consultative physician Dr. Peter Quintero.  Docket No. 18 at 23-24.

In assessing a medical opinion, an ALJ must consider the supportability of that opinion, i.e., the extent to which the medical source provides relevant evidence to support his or her opinion, 20 C.F.R. § 416.927(c)(3), as well as the extent to which a medical opinion is consistent with the record as a whole.  20 C.F.R. § 416.927(c)(4). An ALJ may not, however, "substitut[e] his own medical judgment for that of mental health professionals."  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); *see also Pietrunti v. Director, Office of Workers' Compensation Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("an ALJ cannot arbitrarily substitute his own judgment for competent medical evidence"); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("Common sense can mislead; lay intuitions about medical phenomena are often wrong."); *Proctor v. Astrue*, 665 F. Supp. 2d 1243, 1255 (D. Colo. 2009).

According to Social Security regulations, in deciding the weight given to any medical opinion, an ALJ is to consider the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); *see* 20 C.F.R. § 416.927(c). The ALJ's decision must be sufficiently specific so as to make clear the weight she gave to a medical opinion, but the ALJ is not required to expressly apply each of the factors in deciding what weight to give a medical opinion. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

On January 8, 2010, Dr. Quintero completed an consultative examination report. R. at 257-60. Dr. Quintero took plaintiff's medical history, R. at 257-59, and noted his examination findings. R. at 259-60. Dr. Quintero's examination revealed, among other things, normal motor tone and strength, normal sensation except for decreased pain perception over her feet, normal coordinate movements, normal gait, "unsteady with tandem walk," normal extension, back pain with palpation of the lower spine, lateral rotation, and flexion of her back and spine, and straight leg raising to 30 degrees bilaterally. *Id.* Dr. Quintero's clinical impressions were: "1. Grand mal seizure disorder – poorly controlled. 2. Chronic low back pain – etiology not apparent. 3. Peripheral neuropathy - etiology never determined. 4. Bipolar disorder." R. at 260. Dr. Quintero reached the following conclusion:

> This patient has no objective impairment with her ability to sit, stand, move about, carry, or handle objects.
>
> This patient demonstrates no objective evidence of disc disease or arthritis. She has no evidence of active inflammatory or deformity of her back and spine. Her gait is normal. The patient has no impairment with fine manipulations.

*Id.*

On January 22, 2010, Dr. Quintero completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) ("medical source document"). R. at 261-

66. Dr. Quintero checked boxes indicating limitations in plaintiff's ability to lift and carry, sit, stand, and walk, and operate foot controls, and indicating that plaintiff had postural and environmental limitations. *Id.*

The ALJ discussed both Dr. Quintero's examination report and medical source document, stating "[t]he undersigned has considered the opinions of Dr. Quintero but rejects his opinion that the claimant is limited to medium work since his clinical findings do not support this limitation. Rather, they supported the conclusion that the claimant's only physical limits are to avoid activities in which she could get injured because of her seizures." R. at 40.

Plaintiff's argument is somewhat unclear. Plaintiff states that, in discussing Dr. Quintero's examination report, "the ALJ wrote, 'It was opined that the claimant had no objective impairment with her ability to sit, stand, move about, carry, or handle objects.'" Docket No. 18 at 23 (citing R. at 40). Plaintiff then goes on to identify various aspects of Dr. Quintero's examination report and medical source document in an apparent attempt to undercut the ALJ's statement regarding the conclusion of Dr. Quintero's examination report. *See id.* Plaintiff later contends that the ALJ "had no basis for accepting part of Dr. Quintero's opinion and rejecting the portions of the opinion that may have led to a finding of disabled." *Id.* at 24.

An ALJ "is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996). Here, however, the ALJ adequately

explained her decision not to adopt the limitations set forth in the medical source document and substantial evidence supports her decision. First, to the extent plaintiff argues that the ALJ failed to resolve internal inconsistencies in Dr. Quintero's examination report, see Docket No. 18 at 23 (citing R. at 259-260), plaintiff's argument is without merit. Although, as plaintiff points out, Dr. Quintero noted that plaintiff had decreased pain perception, was unsteady with tandem walk, complained of lower back pain with palpation, and complained of low back pain with straight leg raises, Dr. Quintero does not appear to have concluded that such findings would limit plaintiff, opining that plaintiff "has no objective impairment with her ability to sit, stand, move about, carry, or handle objects," has no "inflammatory or deformity of her back and spine," has a normal gait, and has no impairment with fine manipulations. R. at 260. Because the examination report's overall conclusion was that plaintiff had no functional limitations, the ALJ was not required to discuss and/or reconcile specific exam findings set forth in the examination report that allegedly undercut such a conclusion.

Second, to the extent plaintiff argues that the ALJ failed to adequately reconcile the limitations expressed in the medical source document with her RFC findings, the Court disagrees. The ALJ explained that the limitations expressed in the medical source document were unsupported by Dr. Quintero's clinical findings set forth in the examination report, with the exception of those limitations pertaining to plaintiff's seizure disorder. See R. at 40. Substantial evidence supports this explanation. Based upon his examination and clinical findings, Dr. Quintero concluded that plaintiff had no functional impairments related to sitting, standing, walking, moving, carrying, or fine manipulation. R. at 260. Yet, in the medical source statement completed two weeks

8

later, Dr. Quintero contradicted those conclusions by indicating, without explanation, that plaintiff was limited in several of those areas. R. at 261-66. It was well within the ALJ's discretion to recognize this discrepancy, credit the former opinion because it was more consistent with the clinical findings therein, and reject the latter opinion as unsupported by the former. This is not, therefore, a case where the ALJ rejected an uncontradicted medical opinion without sufficient explanation. *Cf. Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Plaintiff suggests that the ALJ should have considered the fact that Dr. Quintero is a neurological specialist and given his opinions greater weight as a result. Docket No. 18 at 23. However, the ALJ appears to have given considerable weight to the opinions Dr. Quintero expressed in the examination report; thus, plaintiff's argument is essentially an assertion that the ALJ should have given greater weight to the limitations Dr. Quintero expressed in the medical source statement. For the reasons discussed above, the Court rejects this argument. Moreover, the fact that a physician is a specialist is one of the considerations in evaluating a medical opinions, and ALJ is not required to expressly apply such consideration. *See Oldham*, 509 F.3d at 1258. Plaintiff appears to contend that Dr. Quintero's medical source document should have been given greater weight because it is the only medical opinion in the record explicitly setting forth any physical functional limitations. Docket No. 18 at 24. However, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *See*

*Chapo v. Astrue*, 682 F.3d 1285, 1288-89 (10th Cir. 2012).[2]  For the foregoing reasons, plaintiff has failed to identify reversible error in the ALJ's treatment of Dr. Quintero's opinions.

### 2. GAF Score

On February 20, 2008, plaintiff underwent a consultative examination with psychologist Dr. Dianne Guerra.  R. at 244.  Dr. Guerra diagnosed plaintiff with "Schizophrenia, provisional," "Major depressive disorder, mild, recurrent," "Epilepsy, neuropathy, client reported," "Adult antisocial behavior," and assigned plaintiff a Global Assessment Functioning ("GAF") score of 45.  R. at 247.  Dr. Guerra noted that plaintiff could manage money and appeared to give full effort during the evaluation, though her responses were sometimes non-spontaneous and vague, and she complained of physical pain.  *Id.*  Dr. Guerra recommended that plaintiff undergo a medical evaluation. *Id.*  Dr. Guerra noted that plaintiff had just been released from the Colorado Department of Corrections and did not have any structure in her life.  *Id.* at 247-48.  Dr. Guerra suggested that plaintiff " find some sort of structured activities to do during the day if she is unable to work, perhaps participating in a day program for adults."  R. at 248. Although plaintiff complained of concentration problems, no such problems presented during the evaluation and Dr. Guerra stated that vocational training may be beneficial "if it is determined that her medical conditions do not interfere with her ability to work."  *Id.* Dr. Guerra noted that plaintiff did not provide much information regarding her claims of

---

[2]To the extent plaintiff argues that Dr. Quintero's opinion should be analyzed as though it came from a treating source, *see* Docket No. 18 at 22-23, plaintiff's argument is conclusory and unsupported.

auditory hallucinations and depression, but Dr. Guerra suggested that plaintiff undergo a psychiatric evaluation and participate in regularly scheduled mental health treatment. *Id.* In his decision, the ALJ recounted Dr. Guerra's examination findings, diagnosis, and conclusions, including noting that Dr. Guerra assigned plaintiff a GAF score of 45. R. at 39. The ALJ did not further discuss Dr. Guerra's examination finding or GAF score.

Plaintiff argues that the ALJ failed to properly address plaintiff's February 20, 2008 GAF score. Docket No. 18 at 24-25. An ALJ is not required to discuss every piece of evidence; rather, he must discuss the evidence supporting his decision and "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Plaintiff's GAF score does not satisfy any of these requirements. The ALJ's decision does not indicate that she explicitly or implicitly relied on plaintiff's February 20, 2008 GAF score in support of her decision. Plaintiff's February 20, 2008 GAF score is not uncontroverted as to plaintiff's functional limitations or lack thereof. A GAF score in the range of 41-50 indicates "'[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 n.3 (10th Cir. 2004) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (text revision 4th ed. 2000)). Thus, a GAF score in the 41-50 range does not necessarily relate to the ability to hold a job. *Lopez v. Barnhart*, 78 F. App'x 675, 678 (10th Cir. 2003) (unpublished). Even assuming that plaintiff's February 20, 2008 GAF suggests some inability to hold a job, such a suggestion is contradicted by Dr. Quintero's opinion, R. at 260, the March 3, 2008 mental residual functional capacity assessment completed by state agency reviewing physician Dr.

11

Ellen Ryan, R. at 190-92, and to some extent by Dr. Guerra's other exam findings, which imply that plaintiff may be able to work.  R. at 248.  For the same reasons, the Court cannot conclude that plaintiff's February 20, 2008 GAF score is significantly probative so as to require the ALJ to articulate specific reasons why she chose to discount it.  *See Butler v. Astrue*, 412 F. App'x 144, 147 (10th Cir. 2011) (unpublished) (concluding that ALJ did not err in failing to explicitly discuss GAF scores of 44, 45, and 46 in part because scores were not uncontroverted and because they "were not linked to any work-related limitations [and therefore] are not particularly helpful").

Plaintiff concedes that failure to discuss a GAF score may not, by itself, constitute reversible error, but argues that, in light of her physical limitations and the ALJ's improper weighing of Dr. Quintero's opinion, the ALJ's failure to discuss her February 20, 2008 GAF score was reversible error.  Docket No. 18 at 25.  However, as noted above, the ALJ did not fail to properly consider Dr. Quintero's opinion.  Moreover, plaintiff's argument constitutes a request to reweigh the evidence, a request which the Court declines.  *See Flaherty*, 515 F.3d at 1070.  Plaintiff therefore fails to identify reversible error in this aspect of the ALJ's decision.

### 3. RFC

Plaintiff generally argues that the ALJ should have included additional limitations in her RFC finding.  Plaintiff's arguments on this issue are, in large part, conclusory, unsupported by citation to the record, and lacking in explanation.  *See* Docket No. 18 at 25-26.  For example, to the extent plaintiff suggests that the ALJ should have incorporated in the RFC physical limitations related to neuropathy and back pain, Docket No. 18 at 25, the ALJ properly evaluated Dr. Quintero's opinions and the

opinions, as discussed above, expressed in the examination report constitute substantial evidence in support of the ALJ's physical RFC finding. Thus, to the extent plaintiff challenges the physical limitations contained in the ALJ's RFC finding, plaintiff fails to identify reversible error.

With respect to plaintiff's mental limitations, however, upon review of plaintiff's suggestion that the ALJ should have incorporated the functional limitations set forth in the report of state agency reviewing psychiatrist Dr. Ellen Ryan, *see id.* at 25-26, the Court concludes that remand is warranted. Dr. Ryan concluded that plaintiff suffered from depression with psychotic features, R. at 179, and found that plaintiff was only moderately limited in her ability to maintain social functioning and concentration, persistence, or pace and that plaintiff was not limited by episodes of decompensation. R. at 186. Dr. Ryan concluded that plaintiff was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration, interact appropriately with the general public, and get along with co-workers, but was otherwise not significantly limited. R. at 190-91. Dr. Ryan did not credit plaintiff's previous diagnosis of schizophrenia due to a lack of explanation in the record, but concluded that plaintiff can do work requiring little judgment and simple tasks learned in one month and can appropriately interact with supervisors, but should have less interaction with co-workers and the public. R. at 192. The ALJ recounted Dr. Ryan's findings and gave her opinion great weight. R. at 41. The only mental functional limitation the ALJ included in her RFC finding, however, was restricting plaintiff to "only occasional interactions with coworkers and the general public." R. at 37.

Although the ALJ adopted Dr. Ryan's conclusion that plaintiff was limited in her

ability to interact with coworkers and the general public, the ALJ's RFC findings suggest that the ALJ implicitly rejected Dr. Ryan's findings that plaintiff was moderately limited in her ability to carry out detailed instructions and maintain attention and concentration for extended periods, R. at 190, as well as Dr. Ryan's conclusion that plaintiff could do work requiring little judgment and simple tasks that could be learned in one month. R. at 192. Despite giving Dr. Ryan's opinion great weight, the ALJ did not explain her decision to adopt certain of Dr. Ryan's suggested limitations and implicitly reject others, and, in so doing, failed to resolve the apparent conflict between Dr. Ryan's opinion and the ALJ's RCF assessment. *See* SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996); *see Robinson*, 366 F.3d at 1083. Because the Court cannot appropriately resolve this conflict in the context of this appeal, the ALJ must do so on remand.

The Commissioner argues that, because the ALJ's step five findings limited plaintiff to unskilled work and because Dr. Ryan's suggested limitations are not inconsistent with the mental function required for unskilled work, any failure by the ALJ to incorporate all of Dr. Ryan's suggested limitations in her RFC finding is immaterial. Docket No. 19 at 13. The Commissioner appears to be correct that the ALJ's findings at step five necessarily limited plaintiff to unskilled work. The Grids[3] reflect only the availability of jobs at the unskilled level. *See Ortiz v. Sec'y of Health & Human Servs.*, 890 F.2d 520, 526 (1st Cir. 1989) ("the Grid rules are directly premised on the availability of jobs at the unskilled level" (citing 20 C.F.R. pt. 404, subpt. P, app. 2)).

---

[3]The grids consist of tables addressing whether a claimant is disabled based upon an RFC category (e.g., sedentary, light) as well as claimant's age, education, and work experience. *See* 20 C.F.R. pt. 404, subpt. P, app. 2.

Thus, by utilizing the Grids and finding that plaintiff "has not had a substantial loss in the ability to meet one of the mental activities required by competitive unskilled work," the ALJ appears to have limited plaintiff to unskilled jobs. R. at 42. However, as the Tenth Circuit has recognized, there is a difference between issues of skill transfer and mental functions, "which are not skills, but, rather, general prerequisites for most work at any skill level." *Chapo*, 682 F.3d at 1290 n.3. "A limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments." *Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) (unpublished). Nonetheless, there are exceptions to this general rule. SSR 85-15 states that the basic demands of

> competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

SSR 85-15, 1985 WL 56857, at *4 (1985). A limitation to unskilled tasks can therefore be used "as shorthand for the specific mental abilities described in SSR 85-15." *See Jaramillo v. Colvin*, 576 F. App'x 870, 875 (10th Cir. 2014) (unpublished). Even if the Court were to assume that, by limiting plaintiff to unskilled work, the ALJ implicitly limited plaintiff to the specific mental demands of unskilled work as described in SSR 85-15, inconsistencies persist between those mental demands and Dr. Ryan's opinion.

In *Jaramillo*, the ALJ gave great weight to the opinion of examining psychiatrist Dr. Charles Mellon, who concluded that the claimant was moderately limited in his ability to carry out instructions, attend and concentrate, and work without supervision, but otherwise had no mental limitations. 576 F. App'x at 872. The ALJ did not explicitly

incorporate Dr. Mellon's suggested limitations into the RFC, instead concluding that plaintiff was limited to simple, routine, repetitive and unskilled tasks. 576 F. App'x at 872. Based upon this RFC, the vocational expert ("VE") identified three jobs that the claimant could perform. *Id.* After concluding that the ALJ intended to use the phrase "unskilled tasks" as a shorthand for the mental functions set forth in SSR 85-15, the Tenth Circuit found that "[n]one of the basic mental abilities of unskilled work described in SSR 85-15 captures any of the three *moderate* limitations Dr. Mellon found . . . nor do the additional limitations to simple, routine, and repetitive tasks." *Id.* at 876. As a result, the RFC the ALJ related to the VE "did not clearly relate the moderate impairments Dr. Mellon found. Rather, the ALJ was required to express those impairments 'in terms of work-related functions' or '[w]ork related mental activities.'" *Id.* (quoting SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996)).

Here, the mental abilities described in SSR 85-15 do not capture the moderate limitations Dr. Ryan found in plaintiff's ability to maintain attention and concentration and Dr. Ryan's opinion that plaintiff could do work requiring "little judgment." *See* R at 190, 192; *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.").[4] As a result, the ALJ's determination at

---

[4] Dr. Ryan opined that plaintiff could perform "simple tasks learned in 1 month," R. at 192, but it is not entirely clear whether this opinion relates to skill transfer or mental functions. *Chapo*, 682 F.3d at 1290 n.3. Assuming it relates to the latter, such an opinion would appear to conflict with the mental abilities described in SSR 85-15.

step five that plaintiff could perform unskilled work is not supported by substantial evidence. See Jaramillo, 576 F. App'x at 876.[5]

On remand, the ALJ may wish to resolve an additional conflict between her RFC finding and implicit conclusion that plaintiff can perform unskilled work. Although SSR 85-15 states that unskilled work requires the mental ability to respond appropriately to coworkers, the ALJ's RFC states that plaintiff is limited in this regard. In light of this conflict, it is not clear whether, at step five, the ALJ appropriately relied on the Grids or should have instead relied on the testimony of a VE. The Court does not reach the remaining issues raised in plaintiff's brief, as the ALJ's analysis on remand may impact how such issues will be resolved. See Watkins v. Barnhart, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").[6]

## III. CONCLUSION

On remand the ALJ is directed to reevaluate plaintiff's mental limitations, resolve any inconsistencies between Dr. Ryan's opinion and the RFC, and reevaluate her conclusion at step five. In addition, the ALJ shall reevaluate her finding that plaintiff is "frequently noncompliant in taking her medications," R. at 41, in light of SSR 96-7p,

---

[5]The parties completed briefing on this case before Jaramillo was decided; thus, neither party addresses it.

[6]In her brief's statement of facts, plaintiff criticizes the ALJ's credibility determination, but does not raise the issue in the argument section of her brief or otherwise assert that the ALJ's credibility assessment constitutes reversible error. See Docket No. 18 at 19. Thus, the Court does not find that plaintiff has appropriately raised an alleged error in the ALJ's credibility determination and will not consider the issue.

1996 WL 374186, at *7-*8 (July 2, 1996) ("the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment"), and any evidence in the record that plaintiff could not afford medications.  *See, e.g.*, R. at 59.

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner denying disability benefits to plaintiff is REVERSED and REMANDED for additional proceedings consistent with this opinion.

DATED September 30, 2015.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge